IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDALL CHATTERS,                     :
                                      :
          Plaintiff,                  :
                                      :
v.                                    :        CIVIL ACTION NO.
                                      :        1:10-CV-3701-RWS
U.S. BANCORP, d/b/a U.S.              :
BANK and AMERICAN HOME                :
MORTGAGE SERVICING INC.,              :
                                      :
          Defendants.                 :
                                      :

## ORDER

This case comes before the Court for a determination of damages associated with the Court's Order [13] granting Plaintiff's Motion for Default Judgment against U.S. Bancorp ("U.S. Bank") [7], Plaintiff's Motion to Take Judicial Notice of Schedule 14A, the Proxy Statement Filed by U.S. Bank with the SEC on March 15, 2011 ("Motion to Take Judicial Notice") [22], U.S. Bank's Motion to Set Aside Default [23], and Plaintiff's Motion for Default Judgment on His Fraud and Punitive Damages Claims [27].  After holding a hearing on April 20, 2011 on the issue of damages (the "Hearing") against U.S. Bank and considering the record, the Court enters the following Order.

As an initial matter, the Court finds it appropriate to take judicial notice of U.S. Bank's March 15, 2011 Schedule 14A, Plaintiff's Motion to Take Judicial Notice [22] is **GRANTED**.

## Background[1]

In January 2009, U.S. Bank took ownership of 1295 Niskey Lake Road SW, Atlanta, GA (the "Property") pursuant to a foreclosure deed.  In May 2009, Taylor, Bean and Whitaker Mortgage Corporation ("TBW"), acting on behalf of U.S. Bank, contracted with Plaintiff for the sale of the property for $117,500. In July 2009, TBW and Plaintiff executed a second contract for the purchase of the Property for $265,000.  The increased sale price was arranged as a result of improvements Plaintiff agreed to perform at the Property prior to the sale, for which TBW agreed to compensate Plaintiff.  As a result of his agreement with TBW, Plaintiff began doing significant renovations to the Property.

In August 2009, TBW ceased operations and stopped servicing loans, including U.S. Bank's mortgage on the Property.  U.S. Bank retained American Home Mortgage Servicing ("AHMSI") to service the mortgage on the Property

---

[1] The background is taken primarily from Plaintiff's Complaint, because Defendant U.S. Bank by its default has admitted the Plaintiff's well-pleaded allegations of fact.  <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975).

and to otherwise manage the Property.  Plaintiff continued performing

renovations at the Property.  Plaintiff, incarcerated for unrelated reasons, was

absent from the Property from October 22, 2009 until January 5, 2010.  During

this period no one at TBW, U.S. Bank, or AHMSI contacted or attempted to

contact Plaintiff.  When Plaintiff returned to the property on January 6, 2010, he

discovered that all of his possessions at the Property had been removed,

including tools and building materials, as well as electronic equipment and

documents relating to his work on, and the sale of, the Property, and documents

relating to another business of Plaintiff's.  The value of the removed items is

approximately $35,907.00.

Plaintiff contacted the loss assessment department of AHMSI to explain

the loss of his personal possessions and also sent to AHMSI a copy of the police

report concerning the missing items.  AHMSI refused to compensate Plaintiff

for his possessions.  The sale of the Property to Plaintiff was also not completed

and Plaintiff was not compensated for the renovations he had done at the

Property.

Plaintiff's Complaint asserts causes of action for breach of contract,

fraud, *quantum meruit*, and conversion.  Plaintiff is seeking damages to

compensate him for his work at the Property and for his removed property, and

is also seeking punitive damages and attorney's fees.  Plaintiff's Complaint was originally filed in the Superior Court of Fulton County, Georgia and was removed to this Court on November 11, 2010.  (Dkt. [1]).  AHMSI filed its Answer [4] on November 17, 2010.  On December 7, 2010, Plaintiff filed a Motion for Default Judgment as to U.S. Bank [7].  On February 9, 2011, the Court granted Plaintiff's Motion for Default.  (Dkt. [13]).

On April 20, 2011, the Court held a damages hearing (the "Hearing") as to U.S. Bank on Plaintiff's breach of contract, fraud, and *quantum meruit* claims as well as Plaintiff's requests for punitive damages and attorney's fees. Plaintiff opted not to pursue damages on his conversion claim against U.S. Bank at the Hearing.  Plaintiff testified at the Hearing, as did Jeffrey Scott Farris, an associate broker realtor with Prudential Georgia Realty, for the Defendant.

## Discussion

## I.      U.S. Bank's Motion to Set Aside Default [23]

U.S. Bank asserts that it has good cause as to why the default judgment entered against it by this Court's Order [13] should be set aside pursuant to Fed. R. Civ. P. 55(c).  For the reasons discussed below, the Court does not find good

AO 72A
(Rev.8/82)

cause to set aside the entry of default judgment against U.S. Bank.  U.S. Bank's

Motion to Set Aside Default [23] is **DENIED**.

On October 18, 2010, the Summons and Complaint were served via

personal service on U.S. Bank's registered agent in Georgia.  (Dkt. [23-3] at 4).

U.S. Bank's corporate trust legal department received the same on October 22,

2010.  (Id.).  U.S. Bank determined that Defendant AHMSI was obligated to

defend U.S. Bank in this action, and it mailed the Summons and Complaint to

AHMSI at what it thought to be the correct address, but later discovered was

incorrect.  (Id.).  Believing AHMSI was defending its interests, U.S. Bank took

no further steps to defend itself in this action.  (Id.).  On December 23, 2010,

U.S. Bank received a copy of Plaintiff's Motion for Default Judgment [7].  (Id.).

U.S. Bank mailed a copy to AHMSI at the incorrect address, and took no

further action.  (Id.).  The unopposed Motion for Default Judgment [7] was

submitted to the Court on December 28, 2010.  The Court waited until February

9, 2011 to grant the Motion [7].  At that time, the Court set a hearing on the

issue of damages for March 11, 2011, but subsequently rescheduled it for April

20, 2011.

On February 15, 2011, U.S. Bank discovered through communication

with AHMSI regarding unrelated litigation, that it had been mailing items to the

5

wrong address.  (Id.).  Yet it still took no further steps in regards to this action. On March 8, 2011, U.S. Bank received a copy of Plaintiff's Brief on Damages [15] and mailed it to AHMSI at the correct address.  (Id. at 5).  On March 9, 2011, an employee of U.S. Bank spoke with an employee at AHMSI and discovered that AHMSI was not defending U.S. Bank in this action.  (Id.).  On March 11, 2011, Gregory M. Taube entered an appearance on behalf of U.S. Bank.  (Dkt. [17]).  On April 19, 2011, the day before the rescheduled Hearing, U.S. Bank filed its first entry in this action–its Motion to Set Aside Default [23].

The Court may set aside an entry of default judgment for good cause, or as provided by Fed. R. Civ. P. 60(b).  Fed. R. Civ. P. 55(c); see also Fed. R. Civ. P. 60(b) (noting that a court may relieve a party from final judgment if it resulted from "mistake, inadvertence, surprise, or excusable neglect").  The Eleventh Circuit has noted that "defaults are seen with disfavor because of the strong policy of determining cases on their merits."  Fla. Phsycian's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (citations omitted).

> In order to establish mistake, inadvertence, or excusable neglect, the defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; *and* (3) a good reason existed for failing to reply to the complaint.

AO 72A
(Rev.8/82)

Id. (emphasis added, citation omitted).  Even assuming that U.S. Bank can

satisfy the first two elements, it cannot demonstrate good cause because it did

not have a good reason for failing to reply to the Complaint.

U.S. Bank asserts that it was "not willful or culpable in failing to answer

Chatters' complaint.  Rather, U.S. Bank's failure was due to innocent

miscommunications related to whether AHMSI would defend U.S. Bank." (Dkt.

[23-3] at 7).  The Court can accept that U.S. Bank's failure to respond to the

Complaint was not willful, but it is nonetheless culpable for that failure because

its neglect is not excusable.  U.S. Bank's belief that AHMSI was defending it in

this action may have been reasonable.  However, when U.S. Bank's legal

department received Plaintiff's Motion for Default Judgment [7]–putting it on

notice that a response to the Complaint had not been filed on its behalf–simply

mailing the Motion [7] to AHMSI without doing anything more is not

excusable neglect.  Compounding this lack of diligence in protecting its

interests, U.S. Bank waited four weeks after discovering that it had been using

the wrong mailing address for AHMSI, and only after receiving Plaintiff's Brief

on Damages [15], to directly inquire of AHSMI as to whether it was being

defended in this action.  Further, U.S. Bank first made an appearance in this

action on March 11, 2011, but did not file its Motion to Set Aside Default [23]

until five weeks later, and on the eve of the Hearing.  The Court finds no good cause to set aside its Order [13] granting Plaintiff's Motion for Default Judgment [7].

## II.   Determination of Damages

A defendant, by his default, "admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting . . . the facts thus established."  <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted).  "Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law."  <u>Id.</u> (citations omitted).  "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true."  <u>Id.</u> (citation omitted).  However, a

> defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of plaintiff's right to recover . . . .  On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment.

<u>Id.</u> (citations omitted).  It is within this framework that the Court examines Plaintiff's claims for damages.

8

A.    <u>Breach of Contract</u>

After considering the factual allegations set forth in the Complaint and the testimony of Plaintiff at the Hearing, the Court concludes that there was a contract between Plaintiff and TBW, U.S. Bank's agent, such that Plaintiff was to be compensated for the renovations he performed at the Property. It is clear from the evidence that Plaintiff did in fact perform substantial work at the Property, but that not all of the work was completed. Plaintiff testified that after TBW stopped communicating with him regarding the purchase of the Property or his work at the Property, he stopped working and submitted an invoice for the work completed to TBW. Plaintiff seeks $105,980.00 for the work performed at the Property, on the basis of the invoice submitted to TBW. (Dkt. [15] at 7-8; Dkt. [15-2] at 15 of 80).

Defendant argues that the "alleged promise to pay for home renovations . . . was conditioned on Chatters buying the house, and Chatters did not buy the house," thus "he did not perform the condition precedent to payment for any alleged renovations." (Dkt. [25] at 3, 4). The Court finds that Plaintiff was to be paid by TBW for the work he performed at the property independent of his agreement to purchase the Property. Even assuming that the purchase of the Property was a condition precedent to payment for the renovation work, it is not

9

entirely clear that Plaintiff's ability to purchase the property was not frustrated

by TBW and/or AHMSI, such that he should not be excused for failure to

satisfy any such condition precedent. The Court also finds that the invoice

submitted by Plaintiff, in conjunction with his testimony and pictures

documenting the state of the Property before and after Plaintiff performed

renovations, provides sufficient detail of the scope of the work performed and

what he was to be paid for that work.

Finally, Defendant argues that Plaintiff cannot enforce the contract

because he is not a licensed contractor, and therefore the contract is illegal, and

enforcing illegal contracts is violative of Georgia's public policy. See O.C.G.A.

§§ 43-41-2, 43-41-12 (contractor performing work valued at more than $2,500

must be licensed); see also JR Constr./Elec., LLC v. Ordner Constr. Co., 669

S.E.2d 224, 226 (Ga. Ct. App. 2008) (holding agreement unenforceable because

contractor failed to comply with Georgia licensing statute). However, while

Georgia public policy may prevent the enforcement of illegal contracts, such a

defense is considered to be an attempt to contest the merits of the case and is

not available to a defendant in default. Cohran v. Carlin, 331 S.E.2d 523, 585-

586 (Ga. 1985) ("The default concludes the defendant's liability, and estops

him from offering any defenses which would defeat the right of recovery.

AO 72A
(Rev.8/82)

[Cits.] All of the defenses in question–public policy, clean hands, etc.–are attempts to contest the merits of the case. [Defendant] was therefore estopped from presenting them at trial . . . .").  Therefore, the defense of illegality is not available to U.S. Bank as a basis for not paying Plaintiff damages on his breach of contract claim.

After examining the evidence presented at the Hearing and based upon a preponderance of the evidence, the Court finds that Defendant U.S. Bank is liable to Plaintiff on Count I of the Complaint for breach of contract, in the amount of $105,980.00.  Having found an express contract existed between Plaintiff and TBW, there can be no claim for recovery under the theory of *quantum meruit*.  Gruber v. Wilner, 443 S.E.2d 673, 677 (Ga. Ct. App. 1994).

B.     Fraud

Plaintiff argued at the Hearing and in his subsequent Motion [27] that he is entitled to damages on his claim for fraud.  However, as noted above, "[a] default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." Nishimatsu Constr. Co., 515 F.2d at 1206.   A defendant is entitled to challenge the sufficiency of the complaint and its allegations to support the judgment.  Id.  Count II of Plaintiff's Complaint states: "Defendant U.S. Bank, through fraud and artifice

and via its agent [TBW], induced Plaintiff to perform valuable improvements at the Property without intent to compensate Plaintiff for those improvements." (Dkt. [1-1] at ¶ 33).  However, in the section of Plaintiff's Complaint entitled "Facts," there is not a single factual allegation concerning TBW's intent when it entered into the contract with Plaintiff concerning the renovations at the Property.  (See Id. at ¶¶ 6-27).  In alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiff's Complaint fails to allege fraud with particularity and therefore his claim for fraud is not well-plead.  Consequently, Plaintiff may not recover any damages on Count II for fraud.  Without a recovery on his claim for fraud, the Court will not award Plaintiff any punitive damages at this time.[2]  Plaintiff's Motion for Default Judgment on His Fraud and Punitive Damages Claims [27] is **DENIED**.

    C.    <u>Attorney's Fees</u>

Plaintiff seeks attorney's fees against U.S. Bank.  Georgia law allows for the recovery of attorney's fees when a defendant "has been stubbornly litigious,

---

[2] Plaintiff's claim against Defendants for conversion is still outstanding. Although U.S. Bank has admitted the facts of Plaintiff's claim for conversion through its default, Plaintiff chose not to pursue damages on this claim at the Hearing. Plaintiff's claim for conversion against U.S. Bank and/or AHMSI may allow for the award of punitive damages.

or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Defendant U.S. Bank, having defaulted, demonstrated a lack of litigiousness, not stubborn litigiousness. Further, to the extent plaintiff was caused unnecessary trouble and expense, it was as a direct result of Defendant AHMSI, not U.S. Bank. The Court will not order U.S. Bank to pay Plaintiff any attorney's fees.

### Conclusion

Having considered the record and the evidence presented at the Hearing, Defendant U.S. Bank is **ORDERED** to pay Plaintiff $105,980.00 for Plaintiff's breach of contract claim against it. Plaintiff's Motion to Take Judicial Notice [22] is **GRANTED**, U.S. Bank's Motion to Set Aside Default [23] is **DENIED**, and Plaintiff's Motion for Default Judgment on His Fraud and Punitive Damages Claims [27] is **DENIED**.

**SO ORDERED**, this   21st   day of June, 2011.


**RICHARD W. STORY**
United States District Judge

13